UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THOMAS HILL,

        Petitioner,

            v.

CINDI CURTIN,

        Respondent.

_____/

                  CASE NO. 5:10-CV-13436
                  JUDGE JOHN CORBETT O'MEARA
                  MAGISTRATE JUDGE PAUL J. KOMIVES


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION: ................................................ 2
II.    REPORT: .......................................................... 2
    A.    *Procedural History* ........................................... 2
    B.    *Factual Background Underlying Petitioner's Conviction* .................. 5
    C.    *Standard of Review* ......................................... 8
    D.    *Self Representation (Ground 1)* ................................ 10
        1.    *Clearly Established Law* ................................ 10
        2.    *Analysis* ........................................... 12
    E.    *Cross-Examination (Ground 2)* ................................ 13
        1.    *Clearly Established Law* ................................ 13
        2.    *Analysis* ........................................... 14
    F.    *Right to Present a Defense (Ground 3)* ........................... 15
        1.    *Clearly Established Law* ................................ 15
        2.    *Analysis* ........................................... 17
    G.    *Recommendation Regarding Certificate of Appealability* .................. 18
        1.    *Legal Standard* ....................................... 18
        2.    *Analysis* ........................................... 19
    H.    *Conclusion* ............................................... 20
III.   NOTICE TO PARTIES REGARDING OBJECTIONS: ....................... 20

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny a certificate of appealability.

II.    REPORT:

A.     *Procedural History*

1.     Petitioner Thomas Hill is a state prisoner, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan.

2.     On September 11, 2007, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750. 529; and car jacking,  MICH. COMP. LAWS § 750.529a(1), following a jury trial in the Wayne County Circuit Court.  On September 25, 2007, he was sentenced to concurrent prison terms of 20 to 40 years' for each  conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

> MR. HILL WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW DUE TO THE COURT'S INTERFERENCE WITH HIS COUNSEL'S CROSS-EXAMINATION OF WITNESSES AND PROHIBITED DEFENSE COUNSEL FROM ESTABLISHING MR. HILL'S DEFENSE, THEREBY DEPRIVING MR. HILL OF HIS RIGHT TO CONFRONT AND QUESTION THE WITNESSES AGAINST HIM AND HIS RIGHT TO PRESENT A DEFENSE RESULTING IN A VIOLATION OF MR. HILL'S RIGHT TO A FAIR TRIAL.

Defendant-Appellant's Brief On Appeal filed on March 27, 2008. Petitioner filed his own supplemental brief in pro se, raising the following claims:

> MR. HILL WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW PRESERVED IN THE CONSTITUTIONS IV AMENDMENT. DUE TO INVESTIGATOR MISCONDUCT AND PROSECUTOR ABUSE OF DISCRETION FOR FAILURE TO ESTABLISH PROBABLE CAUSE TO BELIVE [SIC] A CRIME WAS COMMITED [SIC] AND PROBABLE CAUSE TO BELIEVE MR. HILL COMMITED [SIC] IT, IN ORDER TO ISSUE A WARRANT OF MR. HILL'S ARREST.

> MR. HILL WAS DENIED DUE PROCESS OF LAW PRESERVED IN THE CONSTITUTION'S [SIC] IV AMENDMENT BECAUSE OF A DEFECTIVE WARRANT. FAILURE TO SHOW IT'S DETERMINATION OF PROBABLE CAUSE THAT A CRIME WAS COMMITTED THOSE

2

CHARGES [UNREADABLE] AND, AND [SIC] PROBABLE CAUSE TO BELIEVE MR. HILL COMMITTED THE CHARGED IN THE WARRANT AND COMPLAINT IN ORDER OF THE DISTRICT COURTS PROCEED IN PRELIMINARY PROCEEDING, AND A JURISDICTIONAL DEFECT TO PROCEED IN ANY PROCEEDING WITHOUT THE PROPER RETURN OF PROBABLE CAUSE DETERMINATIONS IN THE WARRANT AND COMPLAINT.

MR. HILL WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE DUE PROCESS OF LAW BECAUSE THE DISTRICT COURT WAS WITHOUT JURISDICTION TO [UNREADABLE].

MR. HILL WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW BECAUSE OF TESTIMONIAL HEARSAY THEREBY DEPRIVING MR. HILL HIS RIGHT TO CONFRONT AND QUESTION THE WITNESSES AGAINST HIM AND HIS RIGHT TO PRESENT A DEFENSE, RESULTING IN A VIOLATION OF MR. HILL'S RIGHT TO A FAIR TRIAL AND BECAUSE OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO OBJECT.

Defendant-Appellant's Brief On Appeal Supplemental filed on June 19, 2008.  Petitioner then filed a second *in propria persona* brief, raising the following issue:

WAS MR. HILL DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO SELF-REPRESENTATION BY THE TRIAL COURT'S SUMMARY DENIAL OF HIS TIMELY REQUEST TO GO *PRO SE.*

Defendant- Appellant's Supplemental Brief On Appeal filed December 10, 2008.  The Court of Appeals affirmed his conviction and sentence in a published opinion, in which one judge dissented. *See People v. Hill*, 282 Mich. App. 538, 766 N.W.2d 17 (2009)(per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal to the Michigan Supreme Court, raising the following claims:

MR. HILL WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO SELF REPRESENTATION BY THE TRIAL COURT'S SUMMARY DENIAL OF HIS TIMELY REQUEST TO GO PRO SE.

MR. HILL WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW DUE TO THE COURT'S INTERFERENCE WITH HIS COUNSEL'S CROSS-EXAMINATION OF WITNESSES AND PROHIBITED DEFENSE COUNSEL FROM ESTABLISHING MR. HILL'S DEFENSE, THEREBY DEPRIVING MR. HILL OF HIS RIGHT TO CONFRONT AND QUESTION THE WITNESSES AGAINST HIM AND HIS RIGHT TO PRESENT A DEFENSE RESULTING IN A VIOLATION OF MR. HILL'S RIGHT TO A FAIR TRIAL.

Application For Leave To Appeal on April 20, 2009.  The petitioner filed his own *in propria persona*

application, raising the following issues:

> MR. HILL WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW PRESERVED IN THE
> CONSTITUTION'S IV AMENDMENT. DUE TO INVESTIGATOR MISCONDUCT AND
> PROSECUTOR ABUSE OF DISCRETION FOR FAILURE TO ESTABLISH PROBABLE CAUSE TO
> BELIEVE A CRIME WAS COMMITED [SIC] AND PROBABLE CAUSE TO BELIEVE MR. HILL
> COMMITTED IT, IN ORDER TO ISSUE A WARRANT FOR MR. HILL'S ARREST.

> MR. HILL WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW
> PRESERVED IN THE IV CONSTITUTIONAL AMENDMENT BECAUSE OF A DEFECTIVE,
> INVALID WARRANT, RESULTING IN FALSE INCARCERATION.

> MR. HILL WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW BECAUSE
> THE CIRCUIT COURT WAS WITHOUT JURISDICTION TO PROCEED IN THE CONVICTION OF
> MR. HILL AND BY ADDING A NEW OFFENSE WITHOUT HAVING A PRELIMINARY
> EXAMINATION THEREBY DEPRIVING MR. HILL [OF] DUE PROCESS OF LAW.

> MR. HILL WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW BECAUSE
> OF TESTIMONIAL HEARSAY. THEREBY DEPRIVING MR. HILL HIS RIGHT TO CONFRONT
> AND QUESTION THE WITTNESSES [SIC] AGAINST HIM AND HIS RIGHT TO PRESENT A
> DEFENSE RESULTING IN A VIOLATION OF MR. HILLS RIGHT TO A FAIR TRIAL. AND
> BECAUSE OF INEFFECTIVENESS OF TRIAL COUNSEL FOR FAILURE TO OBJECT.

Defendant-Appellant's *Pro Per* Supplemental brief filed April 21, 2009.

5. The Michigan Supreme Court affirmed the Court of Appeals' judgement that Petitioner's right to self-representation was not violated, on a different ground, and otherwise denied his application for leave to appeal with one Justice dissenting. *See People v. Hill*, 485 Mich. 912, 773 N.W.2d 257 (2009).

6. Petitioner filed a petition for certiorari with the United States Supreme Court, which was denied on March 22, 2012. *See Hill v. Michigan,* 130 S. Ct. 1899 (2010)*.*

7. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 23, 2010. As grounds for the writ of habeas corpus, he raises three claims:

I.    PETITIONER WAS DENIED HIS RIGHT TO SELF-REPRESENTATION
II.   PETITIONER WAS DENIED HIS RIGHT TO CONFRONTATION.
III.  PETITIONER WAS DENIED HIS RIGHT TO PRESENT A DEFENSE BECAUSE HIS RIGHT

TO CROSS-EXAMINATION WAS LIMITED.

8.      Respondent filed his answer on April 4, 2011.  He contends that it should be denied.

B.      *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized in

respondent's answer:

> Karen Byrd, who had been living at a drug treatment facility for almost a month, testified that she knew Petitioner as June. (Trial Transcript dated 9/10/2007 [9/10/07], 78-80, 106). On Saturday, May 12, 2007, at 11 p.m., she ran into Petitioner's girlfriend Theresa at Euclid and Woodward. (9/10/07, 79, 81, 108, 110-111; 9/11/07, 50). Theresa asked Byrd for some change, and Byrd gave her a dollar. (9/10/07, 91, 108-109, 121).
>
> At that time, Byrd was on her way into the liquor store, buying wine coolers and getting boxes because she was moving. (9/10/07, 81, 83-84). Byrd did not drink and was buying the coolers for "Five," whom she had met on Friday. (9/10/07, 82, 110-111). Five let her borrow his car – a four-door Saturn. (9/10/07, 82-83, 109-110).
>
> At that time, Byrd had known Petitioner for four or five months. (9/10/07, 79). They were not friends, but she saw him a number of times when they were "copping" (*i.e.,* buying drugs). (9/10/07, 79-80, 107). That day, however, Byrd had not used drugs. (I, 107). Byrd purchased her wine coolers, but didn't get any boxes. (9/10/07, 82-83, 111).
>
> When Byrd left the store, Theresa asked for a ride for herself and Petitioner to a nearby street on Byrd's way. (9/10/07, 84, 109, 111-112, 122). Theresa complained that her feet were tired. (9/10/07, 84). Byrd recalled joking with them that they owed her breakfast because she was in a hurry; however, she agreed to take them. (9/10/07, 84). Theresa sat in the front passenger seat as Petitioner sat behind Byrd. (9/10/07, 85).
>
> After they arrived, Theresa was talking to Byrd while Petitioner went inside a house. (9/10/07, 84-85). Petitioner returned after five or six minutes. (9/10/07,  85, 112). Byrd, who realized that she had purchased the wrong type of coolers, returned to the liquor store. (9/10/07, 85, 113). Neither Petitioner nor Byrd came in with her because a police car had pulled in behind them. (9/10/07, 86, 113-114). Theresa said something about Petitioner having tickets. (9/10/07, 86, 114). Byrd went into the store by herself and made the exchange. (9/10/07, 86, 113). When she returned to Five's car, Theresa asked Byrd to take them to Petitioner's grandmother's house because they did not want to be bothered with the police. (9/10/07, 86, 114). Byrd agreed because they were "supposed to be [her] buddies" and she "thought they were okay." (9/10/07, 86-87, 105, 114, 122).
>
> On the way, Petitioner asked her to stop at another liquor store. (9/10/07, 88-89, 115). She did and, after Petitioner returned, he directed her to drive. (9/10/07, 89, 115).

5

Petitioner eventually directed her to a house, where she parked with the engine still running. (9/10/07, 90-92, 116).

Theresa then asked for two more dollars. (9/10/07, 91, 116-117). As Byrd reached for the money, which she kept inside her bra, Petitioner, who by then was seated in the middle of the back seat, grabbed the keys and turned off the ignition. (9/10/07, 91-92, 116-117; 9/11/07, 36). Byrd turned, asking Petitioner what he was doing. (9/10/07, 92-93).

Petitioner had a black automatic handgun pointed at her temple. (9/10/07, 93, 117-118). Byrd told Petitioner that he was going to have to kill her. (9/10/07, 94, 117). Byrd explained that she knew who Petitioner was, and, one part of her thought that Petitioner was not serious because she had been nice to him. (9/10/07, 94). Petitioner responded that he would not shoot her in the head, but in the abdomen. (9/10/07, 93-94).

At the same time, Petitioner was choking Byrd. (9/10/07, 94-95). At the same time, Theresa hit and jabbed Byrd's chest and side. (9/10/07, 95-96, 124). Byrd blacked out and, when she regained consciousness, Petitioner was telling her to get out of the car. (9/10/07, 96-98, 122-123). When Byrd did so, Petitioner asked her where the rest of the money was. (9/10/07, 96-98). Byrd told him that he had all the money. (9/10/07, 96-98, 123). Byrd had approximately $60 in her bra. (9/10/07, 105). There were also two or three Wild Times lottery tickets and two other lottery tickets in the car's sun visor. (9/10/07, 105).

Petitioner told Byrd to walk in a certain direction, but she refused, telling him that he would shoot her in the back. (9/10/07, 97-98).

Petitioner told Theresa to get in the car and they left. (9/10/07, 98).

Byrd ran to the house which Petitioner claimed belonged to his grandmother, banging on the window. (9/10/07, 98, 124). Byrd could barely speak. (9/10/07, 99). The home's occupants did not let Byrd in, but they called 911 because she was on the ground and "hysterical." (9/10/07, 99, 124-125).

The police came after a few minutes. (9/10/07, 99, 125). Byrd was crying. (9/10/07, 99, 125). Byrd described the officers as being rude, but they took her to her house. (9/10/07, 99-100, 125-126). The police talked to Five. (9/10/07, 100).

Byrd walked to the corner telephone booth and called an ambulance because she was having difficulty breathing. (9/10/07, 100). Emergency Medical Services drove Byrd to the hospital. (9/10/07, 101).

There, Byrd saw a doctor. (9/10/07, 101). She had contusions on her cervical spine and spine as well as neck and spinal spasms. (9/10/07, 102-103). In addition, she had "strained muscles and ligaments in the neck." (9/10/07, 103). Byrd received antibiotics and Tylenol 3. (9/10/07, 101-103). Byrd was discharged the following morning, on Mother's Day, May 13, 2007. (9/10/07, 103).

Byrd also claimed that the whites of her eyes had "turned as red as they can ever get." (9/10/07, 104). Visine did not help and Byrd was advised to get something with antibiotics in it. However, she didn't have any insurance so her eyes stayed red for a couple of weeks. (9/10/07, 104-105, 127).

6

After being released from the hospital, Byrd called and, two days later, went to the police station to make sure that a report had been filed and to complain about the responding officers. (9/10/07, 126-127, 131). Byrd opined that the responding officers disregarded her report because she was hysterical, wasn't dressed properly and was an "out of control dope fiend." (9/10/07, 126). Byrd discovered that no report had been filed and she made an official report. (9/10/07, 127, 129-131). Seventy-year-old Williene Jackson actually owned the 1995 four-door white Saturn. (9/11/07, 5, 9). She loaned the car to her son James, nicknamed J-Five, on Friday, May 11, 2007; however, the police report stated that she loaned it to him on Saturday. (9/11/07, 5-6, 9-11). Two or three weeks later, the police found the car. (9/11/07, 6). Williene described women's clothes, garbage and food as being in the car. (9/11/07, 7). James Jackson testified that he got permission from his mother to use her car on Saturday, May 12, 2007. (9/11/07, 12-13). He ran into Byrd at the Burger King. (9/11/07, 13). He let her use the car to go to the store to buy alcohol while he stayed at her house. (9/11/07, 14, 17). When Byrd returned, she was crying and reported that the car was stolen. (9/11/07, 14). Byrd also reported that her throat hurt and that she couldn't breathe. (9/11/07, 15-16). They walked to the pay phone where Byrd called EMS and was taken to the hospital. (9/11/07, 16). James told Williene that her car was stolen from him, even though it was stolen from Byrd. (9/11/07, 17-18). On May 24 or 25, Detroit Police Department Officer Edwardo Torres was assigned Byrd's case. (9/11/07, 24, 28). Torres had spoken to Byrd, who confirmed that her assailant was "June." (9/11/07, 25). Torres already had that information from the earlier report Byrd made. (9/11/07, 25). Torres was familiar with Petitioner's nickname. (9/11/07, 25). On May 27, 2007, Torres and Detroit Police Department Officer Miguel Benavides went to Byrd's daughter's house. (9/11/07, 18-19, 22, 24). Benavides showed Byrd a photographic array and took her statement. (9/11/07, 19). Byrd chose Petitioner's photograph. (9/11/07, 20-22).

Officer Torres also obtained the 911 calls made on May 13, 2007, and they were played for the jury. (9/11/07, 26-28). On the 911 tapes, the people are overheard saying: "I saw her get pushed out of a car; she is up at the front of my house. She is crying. She is saying this person robbed her." (9/11/07, 54, 63, 69, 79-80).

Officer Torres also obtained the police activity logs, showing that officers responded on May 13. (9/11/07, 30). On May 15, 2007, another report was made. (9/11/07, 30-31).

Petitioner was arrested. (9/11/07, 26).

The parties stipulated that Petitioner had previously been convicted of a felony and was ineligible to carry a firearm. (9/11/07, 36).

Detroit Police Department Officer J.B. Lawson testified that on Tuesday, May 15, 2007, Byrd came in to make a report. (9/11/07, 42, 45). Byrd told Lawson about a black object, possibly a handgun, that was put to her head. (9/11/07, 44-47).

Outside of the jury's presence, Petitioner waived his right to testify, reporting he had decided not to. (9/11/07, 50-52).

After deliberating for 37 minutes, the jury returned its guilty verdicts on the charges of armed robbery and car jacking, but it acquitted Petitioner of being a felon-in-

possession and felony-firearm. (9/11/07, 103-107). The state trial court later explained that the jury was uncomfortable with convicting Petitioner on the weapons charges without a gun being found. (9/25/07, 5).

Answer, at 3-8.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

8

U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the

9

decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.   *Self Representation (Ground 1)*

Petitioner first contends that he was denied his right to self representation because his request to represent himself was knowingly, intelligently, and voluntarily made, was clear and unequivocal, and was timely.

1.   *Clearly Established Law*

The Sixth Amendment, applicable to the states through the Fourteenth Amendment Due Process Clause, provides that a criminal defendant shall have the right to the assistance of counsel in his defense. *See* U.S. CONST. amend. VI. This right necessarily implies its corollary, that a defendant has a right to proceed without counsel and represent himself. *See Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 833-34 (1975). The right to assistance of counsel and the right to self-representation are thus correlative rights; the assertion of one necessarily constitutes a waiver of the other. *See United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970). Nevertheless, a defendant's waiver of his right to counsel and decision to proceed *pro se* must be knowing and intelligent. *See Faretta*, 422 U.S. at 835; *Carnley v. Cochran*, 369 U.S. 506, 516 (1962). As the Supreme Court explained, in order for the defendant's decision to be knowing and voluntary, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing

10

and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

However, the right to self-representation is not absolute. *See Martinez*, 528 U.S. at 161. A defendant's request for self-representation must be made clearly and unequivocally. *See Buhl v. Cooksey*, 233 F.3d 783, 792 (3d Cir. 2000); *Munkus v. Furlong*, 170 F.3d 980, 983-984 (10th Cir. 1999). Even if requested, the right to self-representation may also be waived through conduct which indicates that the defendant is vacillating on the issue or has abandoned his or her request altogether. *See Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000). A waiver of the right to self-representation may also be found if it reasonably appears to the court that the defendant abandoned his initial request to represent himself. *See id.* The right to self-representation is also waived if it is not timely asserted. *See Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990).

As the Supreme Court has recognized, "most courts" have interpreted *Faretta* to require that a defendant assert his right to self-representation "in a timely manner." *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.,* 528 U.S. 152, 161-62, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000); *see also, e.g., Wood v. Quarterman,* 491 F.3d 196, 201-02 (5th Cir.2007); *United States v. Edelmann,* 458 F.3d 791, 808 (8th Cir.2006); *United States v. Young,* 287 F.3d 1352, 1353-55 (11th Cir.2002); *United States v. Martin,* 25 F.3d 293, 295-96 (6th Cir.1994); *United States v. Brown,* 744 F.2d 905, 908 (2d Cir.1984); *United States v. Lawrence,* 605 F.2d 1321, 1325 (4th Cir.1979). To be timely, a defendant must assert the right of self-representation "before meaningful trial proceedings have commenced" *Lawrence*, 605 F.2d at 1325.; *see also Robards v. Rees*, 789 F.2d 379, 382-83 (6th Cir. 1986). The determination of when meaningful trial proceedings have been commenced will depend on a case by case basis. A defendant's right to represent himself "is sharply curtailed" once a trial

begins. *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir.1965).Thus it is left to the "sound discretion of the trial court" to determine whether to grant a motion to proceed *pro se* made after trial has begun.  *Lawrence,* 605 F.2d at 1324; *see also, Robards,* 789 F.2d at 384.

    2.    *Analysis*

The trial court denied petitioner's request to proceed *pro se* on the grounds that the request was untimely, and the Michigan Supreme Court affirmed on this basis. Because this determination was neither contrary to, nor was unreasonable application of clearly established federal law, the court should conclude that petitioner is not entitled to habeas relief on this claim.

The Supreme Court precedents existing during the state court's decision regarding permissible timing is scarce. No United States Supreme Court case has directly addressed the timing of a request for self representation. However, "Supreme Court precedent includes not only the bright-line rules it establishes but also the legal principles and standards flowing from them." *Marshal v Taylor*, 395 F.3d 1058, 1060 (9th Cir. 2005). The United States Supreme Court has clearly established two points on this matter. First, in *Martinez*, the Supreme Court noted that timeliness can be a consideration when determining whether to grant a motion to proceed *pro se. Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000). Second, the holdings in *Faretta* does indirectly incorporate a timing element due to the Supreme Court's mentioning that Faretta's request was "weeks before trial". Though *Faretta* clearly established some timing element, the precise contours of that element is still unknown. Since the Supreme Court has not yet established when

exactly a *Faretta* request is untimely, state courts may do so as long as they follow the standard that "weeks before trial" is in fact timely. *See Marshall v Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005).[1]

Under 28 U.S.C. § 2254(d)(1), a habeas petitioner is entitled to relief only if a state court's decision was an unreasonable application of clear Supreme Court precedent. Here the Michigan Supreme Court did not unreasonably apply *Faretta* in finding petitioner's request, made on the day of trial, to be untimely. *See Stensin v Lambert*, 504 F.3d 873, 884 (9th Cir. 2009); *Lewis v. Robinson*, 67 Fed Appox. 914, 919 (6th Cir. 2003). Accordingly, the court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Cross-Examination (Ground 2)*

1.     *Clearly Established Law*

The Supreme Court's "Confrontation Clause cases fall into two broad categories:  cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (per curiam).  The latter category, which is implicated here, recognizes that "[c]onfrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974).  Thus, in cases where the trial court has restricted cross-examination in some manner, "the Court has recognized that Confrontation Clause questions will arise because such restrictions

---

[1]Although previously the Sixth Circuit has held that the right to self representation timeliness extends till the jury is empaneled, that court's "independent consideration of the [timing] issue is neither relevant, nor necessary to dispose of the question presented" *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). In *Parker v. Mathews*, the United States Supreme Court clarified that, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court'".*Parker v Matthews*, 132 S.ct. 2148, 2, 55 (2012). Furthermore, circuit court precedents are not to be used in assessing the reasonableness of the state court's decision".

may 'effectively . . . emasculate the right of cross-examination itself.'"  *Fensterer*, 474 U.S. at 19

(quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).

However, the Supreme Court has also explained that the Confrontation Clause does not

"guarantee cross-examination that is effective in whatever way and to whatever extent the defense

might wish."  *Fensterer*, 474 U.S. at 20.  The question is whether the trial court's ruling allowed for

"substantial compliance with the purposes behind the confrontation requirement," or, put another

way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-

examination."  *Green*, 399 U.S. at 166.  Thus, "[s]o long as cross-examination elicits adequate

information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth

Amendment is not compromised by a limitation on cross-examination."  *United States v. Cueto*, 151

F.3d 620, 638 (7th Cir. 1998); *see also*, *United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir.

1986).  Further, even if a restriction on cross-examination amounts to a violation of the confrontation

right, such an error may be harmless.  *See  Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)

2.      *Analysis*

The trial court sustained the prosecutor's objection to petitioner's attempt to elicit testimony

about the victim's preferred drug  choice.  Under the Rules of Evidence, MRE 404(b) and 608 (b), a

general attack on a witness' character is not allowed. In this case, the witness's drug use was only

relevant to her credibility as it would affect her ability to perceive and recall the events which had

occurred. However, the witness asserted that she did not use drugs that day and the defense failed to

bring evidence to the contrary. Furthermore, the defense failed to explain how the previous drug use

or choice of drugs may have had residual effects on the witness's perception. Finally, even though

a defendant may discredit a witness, he cannot do so by a general attack on the witness's character.

14

Petitioner's claim fails, for several reasons. First, in *Davis v Alaska, supra,* the Court held that the Sixth Amendment right to confront a witness guarantees a criminal defendant the right to cross-examine adverse witnesses to expose bias and motivations for testifying. *See id.* at 315-16; *see also, Van Arsdall*, 475 at 678-90 (1986). However, the *Davis* Court limited its Confrontation Clause decision to those facts going to a witness's bias or motive in testifying, as opposed to general attacks on credibility. The Court's decision in *Van Arsdall* was similarly limited. Indeed, in his concurring opinion in *Davis*, Justice Stewart emphasized that the *Davis* "Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination" concerning past convictions. *Davis*, 415 U.S. at 321 (Stewart, J., concurring). Thus, the Sixth Circuit has explained that the cross-examination right protected by the Confrontation Clause is limited to cross-examination directed at eliciting a witness's bias or motive to testify falsely; it does not protect cross-examination designed to elicit substantive evidence or facts going to a witness's general credibility. *See Boggs v. Collins*, 266 F.3d 728, 736 (6th Cir. 2000). Because the question the petitioner sought to ask did not go to the witness's bias or motive for testifying, the court's preclusion of the testimony did not violate the Confrontation Clause.

F.    *Right to Present a Defense (Ground 3)*

1.    *Clearly Established Law*

Although the Constitution does not explicitly provide a criminal defendant with the right to "present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law.  Implicit in these provisions is the right to present a meaningful defense.  As the Supreme Court has recognized, "[t]he right to offer the testimony of

15

witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Further, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, and that "[f]ew rights are more fundamental[.]" *Taylor*, 484 U.S. at 408. Although the right to present a defense is fundamental, it is not absolute. Thus, the right must yield to other constitutional rights, *see e.g.*, *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."), or to other legitimate demands of the criminal justice system, *see United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Further, to constitute a denial of the right to present a defense, a trial court's exclusion of evidence must "infringe[] upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308. A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315). Thus, "'[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 47 (2d Cir. 2001)) (alterations by quoting court). The Constitution prohibits the exclusion of defense evidence that serve a legitimate purpose unless "well-

16

established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006).

      2.     *Analysis*

Here the petitioner cannot show that he was denied his right to present a defense. The petitioner's question would have called for inadmissable evidence. Furthermore, there is likewise no doubt that the petitioner's right to present a defense does not relieve him from his obligation to comply with the rules of evidence, *see Clark v Arizona*, 126 S. Ct. 2709, 2731-32 (2006); *Scheffer*, 523 U.S. at 308. The Court has held that the exclusion of evidence based on state evidence rules is unconstitutional only where it "significantly undermined fundamental elements of the accused's defense," *United States v. Scheffer,* 523 U.S. at 315., by infringing upon a weighty interest of the accused."*Id.* at 308-11.

Here, despite his argument to the contrary, petitioner cannot show that exclusion of two questions, one due to lack of personal knowledge and the other a general character attack, infringed his right to present a full and complete defense. Furthermore, the questions directed toward Detective Torres, were to raise the possibility that the victim exchanged the car for drugs, and thus was lying about the robbery and car-jacking. Nevertheless, petitioner failed to bring forth any evidence to support such a theory. As a result, the questions directed toward Detective Torres were speculative and remote with little connection to the crime. Instead, the questions would have merely created suspicion that the victim fabricated the entire story. Thus, the probative value of the evidence did not outweigh the unfair prejudice, confusion of the issues, or potentially misleading the jury. Furthermore, the Rules of Evidence do not allow such evidence to be presented at trial when the

witness lacks personal knowledge or if it is a general attack on a witness's credibility. As a result of the lack of harm of the exclusion and insufficient connection to a material issue, the trial court did not err in sustaining the objections. Moreover, the petitioner was able to raise a similar theory of the case, though in a slightly different way then requested in the petition.

G.    *Recommendation Regarding Certificate of Appealability*

    1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4));

18

*accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  Fed. R. App. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

   2.   *Analysis*

The court should deny the certificate of appealability as none of the claims stated above are debatable to have violated clearly established federal law.   The petitioner first claimed that his right to self-representation was infringed when the judge did not allow him to proceed *pro se.* The clearly established federal law sets the standard that *pro se* requests are only constitutionally protected if requested weeks before the trial. Since the petitioner only requested to proceed *pro se* on the day of trial, the denial was constitutionally valid according to clearly established federal law.

The petitioner also claims his right to cross-examine was infringed due to not being allowed to inquire into the victim's preferred drug of choice at trial. Questions which are a general attack on a victim's character are not constitutionally protected. The petitioner at that time failed to explain how such evidence would have suggested residual effects on the witness's perception. As a result, it is clear that the evidence the petitioner wished to elicit was contrary to the Rules of Evidence and thus was correctly objected to and sustained by the trial judge.

Finally, the petitioner claims that his right to present a defense was hindered by the trial judge by not allowing him to ask the witness if drug users often traded cars for drugs. This question would have elicited inadmissable evidence and thus was contrary to the rules of evidence. The right to present a defense does not relieve the petitioner to comply with the court rules thus the question was properly denied. Because the three claims presented by petitioner clearly fail to meet the habeas relief standard and the state court's resolution of these claims is not reasonably debatable, the Court should deny a certificate of appealability.

H.    *Conclusion*

This Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: August 29, 2012               s/Paul J. Komives_____
                                     PAUL J. KOMIVES
                                     UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on August 29, 2012 electronically and/or by U.S. mail.

                                     s/Michael Williams_____
                                     Relief Case Manager for the Honorable
                                     Paul J. Komives